UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BARTER and
ALANA BARTER,

                Plaintiffs,

                                               CASE NO. 10-11476

v.                                       HONORABLE DENISE PAGE HOOD

U.S. BANK, N.A.,
AMERICA'S SERVICING COMPANY,

                Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I.   Introduction

This matter is before the Court on Defendants' Motion to Dismiss **[Docket No. 5, filed on April 14, 2010]**.  Plaintiffs filed a response on June 1, 2010 **[Docket No. 8]**, to which Defendants filed a reply **[Docket No. 12, filed on June 7, 2010]**.

### II.   Statement of Facts

As of June 22, 2009, Plaintiffs had a mortgage loan with Defendant, US Bank, that was being serviced by America's Servicing Company (ASC).  On January 9, 2009, Plaintiffs contacted ASC to explain the difficulty they were having paying their mortgage. On or about March 3, 2009, Plaintiffs submitted a request for a four month moratorium and loan modification due to their self-described hardship. ASC requested that further information from Plaintiffs be submitted by April 7, 2009. Plaintiffs timely responded to the request in a letter via facsimile on April 2, 2009. On or about April 27, 2009, ASC asserted, via telephone, that the loan modification review began on March 25, 2009, and Plaintiffs would be contacted by the end of May regarding ASC's determination.  Plaintiffs claim that during the April 27 telephone

conversation, ASC assured Plaintiffs that their home would not be foreclosed upon while the loan modification review was in process. On or about June 10, 2009, Plaintiffs provided ASC with an updated and corrected financial worksheet.

On or about June 16, 2009, ASC sent a letter to Plaintiffs offering a forbearance agreement which stated that ASC would instruct their foreclosure counsel to suspend foreclosure proceedings once the initial payment had been received, and would continue to suspend foreclosure as long as Plaintiffs kept to the terms of the forbearance agreement. The forbearance agreement required past due amounts to be paid in four installments on August 1, 2009, September 1, 2009, October 1, 2009, and November 1, 2009. The forbearance agreement stated that upon successful completion of the four payments, Plaintiffs' loan would be reviewed for a loan modification. The agreement further stated that if any payment was not received by the due date, the forbearance agreement would be rendered null and void. Plaintiffs signed the forbearance agreement and paid the first three of the required payments. However, on June 22, 2009, Plaintiffs received a Notice of Foreclosure with the sale date scheduled for July 21, 2009. On June 22, 2009, Plaintiffs also received a letter, dated June 16, 2009, from Orlans Associates stating that Orlans had been retained by ASC to start foreclosure proceedings. When Plaintiffs called ASC and indicated that foreclosure should not have been commenced while the loan modification was being reviewed and the forbearance agreement was in effect, ASC allegedly informed Plaintiffs that Orlans would be advised not to proceed with the foreclosure.

On or about October 6, 2009, Plaintiffs allegedly called ASC, and ASC requested that Plaintiffs submit updated forms, and further assured Plaintiffs that foreclosure would not proceed while Plaintiffs' loan was in loan modification review. During the same conversation, Plaintiffs assert that ASC told them not to pay the last installment due under the forbearance agreement

2

because the loan modification was in process. On October 24, 2009, Plaintiffs responded by sending the requested document to ASC via facsimile. Plaintiffs did not pay the installment due on November 1, 2009. On or about November 5, 2009, Plaintiffs sent the updated income and profit/loss statements that ASC had requested. However, on or about November 18 or 19, 2009, Plaintiffs were informed by ASC that their request for loan modification had been rejected due to Plaintiffs' failure to submit a requested document. On or about November 22, 2009 Plaintiffs received a letter dated November 16, 2009 from ASC's Senior Vice president informing them of the same, with no mention of any foreclosure proceedings. While ASC was unable to inform Plaintiffs what piece of requested information was missing, ASC indicated Plaintiffs must have failed to return a phone call. Plaintiffs insist all phone calls from ASC were returned immediately. Plaintiffs were told they would have to start the process over to get the loan modification back on track. On November 30, 2009, Plaintiffs resubmitted via facsimile all the required information along with a letter written to ASC's Senior Vice President, questioning the loan modification rejection and ASC's good faith. On or about December 23, 2009, ASC acknowledged receipt of Plaintiffs' November 20, 2009 correspondence and informed plaintiffs that their request for review would be completed within 60 days.

When Plaintiffs called ASC on January 21, 2010, they were informed that their home had been sold at foreclosure on December 8, 2009. On or about the same day, Plaintiffs called Orlans and were again informed that their house was sold at foreclosure on December 8, 2009.  Orlans further informed Plaintiffs that they received the initiation for foreclosure around June 2009, with the original sale date on July 21, 2009. The purchaser of Plaintiffs' home was recorded as US Bank. Plaintiffs claimed they never received notice or information regarding a postponed foreclosure sale or the sale that took place on December 8, 2009.

3

On or about January 23, 2010, Plaintiffs received a letter dated January 12, 2010, from ASC acknowledging that Plaintiffs' November 29, 2009 submission of documents was being reviewed. The letter further stated that the foreclosure action was proper and that Plaintiffs request for rescission of the foreclosure was rejected, despite the fact that Plaintiffs claim they had not yet requested a rescission of the foreclosure. Plaintiffs now bring a claim for breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, promissory estoppel, and injunctive relief.

## III.    Standard of Review

Federal Rules of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  This type of motion tests the legal sufficiency of the plaintiff's Complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6).  *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999).  Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

As the Supreme Court has stated, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-1951 (2009).  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,557 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

4

*Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

IV.    **Analysis**

A.    **Count I: Breach of Covenant of Good Faith and Fair Dealing**

Plaintiffs' claim that Defendant had a duty of good faith and fair dealing implied in the contract between them which was intentionally, wantonly, and/or recklessly breached by the Defendants. However, while there is an implied covenant of good faith that may not be waived under the Uniform Commercial Code (UCC), the UCC only applies to personal property, not real property. *See* MCL 440.3205; *see also Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476 (2003). Michigan common law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. *See Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 35 (2006). While Plaintiffs assert that Count I was simply a breach of contract claim, the face of the Complaint indicates otherwise. Plaintiffs title Count I as a "Breach of Covenant of Good Faith and Fair Dealing," and further state that "defendants had a duty of good faith and fair dealing implied in the contract between them and the Plaintiffs."  Complaint ¶ 49. Therefore, Count I of Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief may be granted.

B.    **Count II: Fraud**

Plaintiffs claim that Defendants knowingly, recklessly, and/or intentionally fraudulently misrepresented to Plaintiffs that ASC was working to provide them with a loan modification, that their home would not be foreclosed upon, and that Defendants were abiding by the forbearance agreement. To constitute actionable fraud, the following elements must be met:

1) the defendant made a material representation;

2) the representation was false;

3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion;

4) the defendant made the representation with the intention that the plaintiff would act upon it;

5) the plaintiff acted in reliance upon it; and

6) the plaintiff suffered damage.

See *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330,336 (1976). With regard to the first element, material representation, "fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Id.*

While Plaintiffs claim that they were told on several occasions that ASC was working to provide Plaintiffs with a loan modification, that they were abiding by the forbearance agreement, and that Plaintiffs' house was not being foreclosed upon while the loan modification processed and forbearance was in effect, Defendants assert that these claims rely upon future conduct. These statements are future promises regarding what ASC will or will not do and the mere failure to perform such promises does not constitute fraud. *Boston Piano & Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 146 (1917) ("If misrepresentations of material facts are made to induce the contract, and do induce it, evidence of such misrepresentations may be given for the

purpose of establishing fraud. But a promise of something to be done in the future is not a misrepresentation of an existing fact.").

Even if Defendants' statements that Plaintiffs did not have to pay the last installment, that they were working on a loan modification and that Plaintiffs' house would not be foreclosed were material representations predicated on past or existing facts, the statements were never reduced to writing. MCL §566.132 states:

> (2) **An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:**
>
> (a) A promise to lend money, grant or extend credit, or make any other financial accommodation.
>
> **(b) A promise or commitment to renew, extend, modify, or permit, a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.**
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation. (emphasis added).

The forbearance agreement, which was in writing, simply stated that, "[u]pon successful completion of the payments outlined in this plan, your loan will be reviewed for a Loan Modification." Forbearance Agreement, Ex. E to Complaint. Because the last payment was not due until November 1, 2009, Defendants were not obligated, under the written contract, to even consider a loan modification. And because Plaintiffs failed to pay the last installment, the forbearance agreement was rendered null and void. Even though Plaintiffs claim they were told by Defendants not to make the last payment, the express terms of the written forbearance agreement are binding. The forbearance agreement expressly states that, "the lender is under no obligation to enter into any further agreement," and "all payments must be received on or before

7

the agreed due date." Under the Statute of Frauds, the review of the loan modification and any assertions that the last installment should not be made must have been in writing, as they contradicted the written terms of the forbearance agreement. Under M.C.L. 566.132(2), "[a]n action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institutions unless the promise or commitment is *in writing* and signed with an authorized signature by the financial institution." (emphasis added). The promises contained within the statute include promises to make any financial accommodations, and promises to permit a delay in repayment or performance of a loan. Plaintiffs' claim for fraud must be dismissed.

### C.   Count III: Negligent Misrepresentation

In Count III of Plaintiffs' Complaint, Plaintiffs claim that Defendants owed them a duty to provide them with accurate information about the status of their loan account. Plaintiffs argue that Defendants were negligent in their representations to Plaintiffs that ASC was working to provide them with a loan modification, that they were abiding by the forbearance, and that their house would not be foreclosed upon.

The elements of negligent misrepresentation are: (1) justifiable and detrimental reliance on (2) information provided without reasonable care (3) by one who owed a duty of care. *German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 958, 964 (2007). Regarding the third element, "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v. Sea Ray Boats, Inc.,* 251 Mich. App. 41, 50 (2002). Negligent misrepresentation is an action in tort and therefore it must "involve a

8

relationship that would give rise to a legal duty without enforcing the contract promise itself." *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1134 (1995).

 No such relationship existed in the instant case. There was no duty separate and distinct from the contractual obligation as the relationship between Defendants and Plaintiffs was simply a contractual relationship based on the forbearance agreement. Plaintiffs do not allege that Defendants were employed to provide them with accurate information, nor do they allege that Defendants breached a professional or business duty of care to provide them with accurate information. Any duty Defendants owed Plaintiffs was based on their written agreement, which did not include any commitments as to the loan modification review period.

 The Michigan Statute of Frauds also bars the negligent misrepresentation claim. *Crown Technology Park, et al. v. D&N Bank, FSB,* 242 Mich App. 538,552 (2000). However, "If a borrower has a separate claim for negligence that does not rely on enforcing the terms of an alleged oral promise, then MCL § 566.132(2) is not a bar to adjudicating the claim on its merits." *Id.* The alleged negligent misrepresentations made by Defendants are reliant on enforcement of the terms of the oral promises, which are separate and distinct from any written contract between Defendants and Plaintiffs. The forbearance agreement contained none of the oral promises the Plaintiffs claim they detrimentally relied upon. In *Crown Technology*, the court held that the plaintiff could not bring a claim against the defendant predicated on an employee's oral promise to waive a prepayment term in a promissory note because the Michigan Statute of Frauds prevented the plaintiff from asserting claims of intentional and negligent misrepresentation. *Id.* Plaintiffs claim of negligent misrepresentation based on Defendants oral promises must be dismissed.

**D.      Count IV: Estoppel**

The court in *Crown Technology* reasons that MCL 566.132(2) bars "an action" and, by not specifying what action is prohibited, the Michigan statute can be read as an unqualified and broad ban which includes a ban on an action for promissory estoppel. *Id.* Therefore, a promissory estoppel claim cannot be permitted as a means to avoid the Statute of Frauds. *Id.*

Additionally, promissory estoppel is an alternative theory of recovery where no contract exists and is a substitute for consideration. *Campbell v. Troy*, 42 Mich. App. 534, 537 (1972). Michigan law does not allow a claim for promissory estoppel where it is used to override an express agreement of the parties contained in a written agreement, such as the forbearance agreement.  *See Martin v. East Lansing School District*, 193 Mich. App. 166 (1992). Therefore, in order to invoke a promissory estoppel claim one must act to his detriment solely in reliance on an oral agreement or no agreement. *Id.*

While Plaintiffs claim they detrimentally relied on Defendants oral promises, promissory estoppel may not be invoked to override the express and written forbearance agreement. The forbearance agreement expressly stated that all four installments must be paid by the date specified and that loan modification review would only be instituted upon successful completion of the payments. An oral agreement that contradicted such terms could not be rightfully relied upon to assert a claim of promissory estoppel. Therefore, Plaintiffs claim of promissory estoppel must be dismissed.

**E.      Count V: Injunctive Relief**

Plaintiffs claim for injunctive relief must be dismissed because, as discussed above, there is a low likelihood that they will succeed on the merits.

**IV.      Conclusion**

10

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss **[Docket No. 5, filed on April 14, 2010]** is GRANTED.

                                        s/DENISE PAGE HOOD
                                          DENISE PAGE HOOD
                                          United States District Judge

DATED:   January 13, 2011

      I hereby certify that a copy of the foregoing document was served upon counsel of record on January 13, 2011, by electronic and/or ordinary mail.

                                          s/Shawntel Jackson
                                          Case Manager

11